UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00063-GNS-HBB

| | |
|---|---|
| CARTER DOUGLAS COMPANY, LLC | PLAINTIFF |
| and | |
| BERKLEY REGIONAL INSURANCE COMPANY | INTERVENOR PLAINTIFF |
| v. | |
| LOGAN INDUSTRIAL DEVELOPMENT AUTHORITY, INC., et al | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Motion to Intervene filed by Berkley Regional Insurance Company ("Berkley") (Mot. to Intervene, DN 24), Defendants' Renewed Motion to Dismiss for Failure to Join Indispensable Parties (Defs.' Renewed Mot. to Dismiss for Failure to Join Indispensable Parties, DN 29 [hereinafter Defs.' Mot. to Dismiss - Joinder]), and Defendants' Renewed Motion to Dismiss for Lack of Federal Diversity Jurisdiction (Defs.' Mot. to Dismiss for Lack of Federal Diversity Jurisdiction, DN 30 [hereinafter Defs.' Mot. to Dismiss - Jurisdiction]). These motions are fully briefed and ripe for adjudication. For the reasons stated below Berkley's Motion is **GRANTED**, and Defendants' Motions are **DENIED**.

## I.  STATEMENT OF FACTS AND CLAIMS

On October 9, 2012, Defendants awarded Carter Douglas Company, LLC ("Carter Douglas") a contract to "[construct] a building pad, parking lot, drainage basin, and entrances at the IDA property located on Shelton Lane, Russellville, Logan County, Kentucky." (Notice of Award, DN 1-3; Suggested Form of Agreement Between Owner and Contractor for Construction Contract (Stipulated Price) Funding Agency Edition 1 at 26, DN 1-4 [hereinafter Construction Contract]). On May 16, 2014, Carter Douglas filed this action alleging that Defendants breached the Construction Contract by failing to pay Carter Douglas certain sums pursuant to that contract. (Compl. 7-8, DN 1).

On October 10, 2014, Carter Douglas, Defendants, and Berkley Regional Insurance Company ("Berkley") entered into a Takeover Agreement in which Berkley agreed to complete the remaining work on the Shelton Lane property, acting in its capacity as surety for Carter Douglas. (Takeover Agreement 2-3, 9, DN 24-1). The Takeover Agreement included a provision that "[u]pon completion of the work under the terms of [the Takeover] Agreement, [Defendants] will pay Berkley $133,400, which constitutes the Net Remaining Contract Funds." (Takeover Agreement 4). The Takeover Agreement further provided that Defendants would deposit the remaining contract funds into the trust account of defense counsel's law firm. (Takeover Agreement 4).

In a letter dated March 18, 2015, defense counsel alerted Berkley's attorney that an engineer had inspected the work done by Berkley and concluded that Defendants should have someone else finish the project. (Pl.'s Mot. for Prelim. Inj. Ex. 4, DN 19-4). The letter included notice that "[e]ffective immediately, [Defendants terminate] Berkley as the contractor, and [Defendants] will proceed to complete the project *utilizing the funds deposited with*

2

*[Defendants'] [attorney]*." (Pl.'s Mot. for Prelim. Inj. Ex. 4 (emphasis added)). By letter dated March 25, 2015, Carter Douglas's counsel requested that defense counsel "provide prompt, unequivocal written assurance that you will neither disburse nor in any way encumber the funds you are holding." (Pl.'s Mot. for Prelim. Inj. Ex. 8, DN 19-8).

On March 27, 2015, Carter Douglas filed a Motion for Preliminary Injunction. (Pl.'s Mot. for Prelim. Inj., DN 19). On April 7, 2015, it filed a Motion for Temporary Restraining Order. (Pl.'s Mot. for TRO, DN 22). On April 13, 2015, Berkley filed its Motion to Intervene. (Mot. to Intervene). On May 8, 2015, Defendants filed their renewed motions to dismiss. (Defs.' Mot. to Dismiss - Joinder; Defs.' Mot. to Dismiss - Jurisdiction). On June 30, 2015, the Court denied Carter Douglas's motions for a preliminary injunction and temporary restraining order. Responses have been filed to all three of the remaining motions. (Defs.' Resp. to Berkley Regional Insurance Mot. to Intervene, DN 28 [hereinafter Defs.' Resp. to Mot. to Intervene]; Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss for Lack of Subject Matter Jurisdiction, DN 34; Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss for Failure to Join Indispensable Party, DN 35). Berkley filed a reply in support of its motion. (Reply Mem. of Berkley Regional Insurance Company in Supp. of Mot. to Intervene, DN 33 [hereinafter Reply - Intervene]). The time to file a reply as to Defendants' motions has passed. These motions are thus ripe for decision.

## II.  STANDARD OF REVIEW

Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citation omitted).

### III.   DISCUSSION

#### A.   Defendants' Motion to Dismiss - Jurisdiction

In their Renewed Motion to Dismiss for Lack of Federal Diversity Jurisdiction, Defendants argue that this Court lacks subject matter jurisdiction over this case because diversity jurisdiction—the sole jurisdictional basis in this matter—does not exist. (Defs.' Mot. to Dismiss - Jurisdiction 7). The motion also requests a hearing to determine whether diversity jurisdiction exists. (Defs.' Mot. to Dismiss - Jurisdiction 7). A hearing is not necessary, however, because the evidence presented in the record is sufficient to resolve the motion.

Carter Douglas was organized as a limited liability company ("LLC") in Kentucky. (Defs.' Mot. to Dismiss - Jurisdiction Ex. B, DN 30-7). For the purpose of determining diversity jurisdiction, LLCs "have the citizenship of each partner or member." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citation omitted). According to Carter Douglas's Annual Report filed with the Kentucky Secretary of State on January 28, 2014—which was less than four months before the filing of this action—Carter Douglas had two members: Wayne Cates and Jennifer Cates. (Defs.' Mot. to Dismiss - Jurisdiction Ex. B). Thus, Carter Douglas is a citizen of the states of which Wayne Cates and Jennifer Cates are citizens. Since Defendants are Kentucky corporations, if either Wayne Cates or Jennifer Cates is a citizen of Kentucky, the requirement of complete diversity will not be met and this Court will have no basis for jurisdiction. *See* 28 U.S.C. § 1332; *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 672 (6th Cir. 2004) ("Section 1332 requires complete diversity . . . .").

"A person's domicile determines his citizenship for diversity purposes. A person's domicile at any given time is a question of intent: what is the fixed location to which he intends to return when he is elsewhere?" *Detroit Lions, Inc. v. Argovitz*, 767 F.2d 919, 1985 WL 13394,

4

at *2 (6th Cir. June 6, 1985) (unpublished table decision). The relevant timeframe to determine citizenship is at the time the suit was filed. *Id.*

Defendants note that Carter Douglas, as a Kentucky LLC, is required to continuously maintain a registered agent that is either an individual or entity who resides in Kentucky whose business address is identical to Carter Douglas's registered office. (Defs.' Mot. to Dismiss - Jurisdiction 6 (citing KRS 14A.4-010; KRS 275.115)). Defendants argue that, because Wayne Cates is listed as the registered agent for Carter Douglas, he must reside in Kentucky. Further, Defendants note that Wayne Cates' address listed on the LLC's 2014 Annual Report is 1229 Herndon Road, Russellville, Kentucky. (Defs.' Mot. to Dismiss - Jurisdiction 6; Defs.' Mot. to Dismiss - Jurisdiction Ex. B).

The remainder of Defendants' evidence regarding the citizenship of the Cateses consists of: (1) two Facebook pages from mid-2014 in which the Cateses are listed as living in Russellville, Kentucky;[1] (2) printouts from the Kentucky Secretary of State's website showing that they were registered voters in Kentucky on August 7, 2014 (Wayne Cates)[2] and August 14, 2014 (Jennifer Cates);[3] (3) similar printouts from the Oklahoma State Election Board's website showing that neither Wayne nor Jennifer Cates was registered to vote in Oklahoma on August 7, 2014;[4] (4) a printout of Carter Douglas's website from some unknown date in 2014 describing it as "located in Russellville, KY";[5] and (5) printout from the Oklahoma Secretary of State's

---

[1] Defs.' Mot. to Dismiss - Jurisdiction Ex. C, DN 30-8; Defs.' Mot. to Dismiss - Jurisdiction Ex. D, DN 30-9.
[2] Defs.' Mot. to Dismiss - Jurisdiction Ex. E, DN 30-10.
[3] Defs.' Mot. to Dismiss - Jurisdiction Ex. F, DN 30-11.
[4] Defs.' Mot. to Dismiss - Jurisdiction Ex. G, DN 30-12; Defs.' Mot. to Dismiss - Jurisdiction Ex. H, DN 30-13.
[5] Defs.' Mot. to Dismiss - Jurisdiction Ex. I, DN 30-14.

website describing Carter Douglas Company, LLC as a foreign LLC organized in Kentucky and a registered agent of Jennifer Cates with an address in Beggs, Oklahoma.[6]

Carter Douglas, on the other hand, provided the following evidence of the Cateses's Oklahoma citizenship: (1) a Residential Lease/Rental Agreement dated June 4, 2013, signed by Jennifer Cates leasing a premises in Oklahoma;[7] (2) a signed letter from the Director of Admissions and Student Accounts at Victory Christian School in Tulsa, Oklahoma, stating that the Cateses's children were enrolled in the school for the 2013-14 school year and would be attending the school in the 2014-15 school year as well;[8] (3) a bank statement addressed to Jennifer Cates at an Oklahoma address;[9] (4) a water bill from the City of Broken Arrow, Oklahoma listing the accountholder as Jennifer Cates;[10] and (5) a picture of Wayne Cates' Oklahoma driver's license issued on August 20, 2014.[11]

There is no evidence or allegation that the Cateses are living in separate households or do not have custody of their children. While Facebook and voter registrations may not be updated for a number of reasons and the requirements of statutes governing businesses may not be met for a number of reasons, one thing that cannot be ignored, forgotten, or neglected is the enrollment of children in school. The Court considers the fact that the Cateses's children are enrolled in school in Oklahoma, and were at the time of the filing of this action, to be dispositive of their intent to make Oklahoma home. It seems highly unlikely that the Cateses would have moved their children to a new school in Oklahoma two years prior to this lawsuit to establish their domicile in Oklahoma in anticipation of this lawsuit. Thus, the Court finds that the Cateses

---

[6] Defs.' Mot. to Dismiss - Jurisdiction Ex. J, DN 30-15.
[7] Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction Ex. 1, DN 9-1.
[8] Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction Ex. 2, DN 9-2.
[9] Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction Ex. 3, DN 9-3.
[10] Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction Ex. 4, DN 9-4.
[11] Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction 7, DN 9.

are both citizens of Oklahoma, which results in complete diversity in this case. Defendants' Renewed Motion to Dismiss for Lack of Federal Diversity Jurisdiction is therefore denied.

B.     **Berkley's Motion to Intervene**

In its Motion to Intervene, Berkley argues that it may intervene as of right or, in the alternative, permissively. (Mot. to Intervene 1). Federal Rule of Civil Procedure 24(a)(2) provides that, upon a timely motion:

> [T]he court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Tracking the language of Rule 24(a)(2), the Sixth Circuit has expressed three factors that a proposed intervenor as of right must demonstrate:

> (a) that he has an interest in the property or transaction that is the subject matter of the litigation; (b) that the disposition of the action as a practical matter may impair or impede his ability to protect that interest; and (c) that parties already in the litigation cannot adequately protect that interest.

*Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984) (citing Fed. R. Civ. P. 24(a)(2)).

On March 18, 2015, Defendants provided notice that they intended to disburse the remaining contract funds which are the subject of dispute in this case. (Mot. to Intervene 4). Berkley asserts in its motion that "Defendants' unwavering refusal to pay the escrowed funds despite certified completion of the project was clarified to Berkley within the last week." (Mot. to Intervene 4). Additionally, Berkley's motion comes less than a week after Carter Douglas's motion for a temporary restraining order. (Mot. to Intervene 4).

Berkley has shown that it has an interest in the property that is the subject matter of this litigation. In the Takeover Agreement, Berkley agreed to complete the work on the Shelton Lane property, and in return for completing its obligations under the Takeover Agreement it would be

7

entitled to the contract price. (Takeover Agreement 2-3). Therefore, Berkley has an interest in a determination of its entitlement to payment as a party to the Takeover Agreement.

Finally, the parties to this suit cannot adequately protect Berkley's interest. Defendants seek to retain the funds, arguing that the work on the Shelton Lane property is incomplete. (Defs.' Resp. to Mot. to Intervene 7). Carter Douglas seeks the funds for the work that it performed on the project prior to Berkley's engagement under the Takeover Agreement. (Compl. 7). Thus, it appears that Berkley's interests are not co-extensive with the interests of Carter Douglas.

Defendants argue in their response that: (1) this Court lacks jurisdiction over this matter because diversity is lacking; (2) Carter Douglas's claims are mooted by the Takeover Agreement, rendering Berkley's motion untimely; and (3) Berkley may not intervene in a federal case in order to avoid the consequences of failing to remove a state court action pertaining to "the identical subject matter." (Defs.' Resp. to Mot. to Intervene 9, 11, 13).

This Court has already disposed of Defendants' first argument; there is diversity in this matter and the Court has jurisdiction. As to the second argument, Berkley notes that this suit was filed prior to the execution of the Takeover Agreement. (Reply - Intervene 2). Berkley also asserts that Carter Douglas "has a legitimate and known interest in the handling and disbursement of the remaining contract funds for which it was the designated entity that completed the final field work and would be entitled to receive the net proceeds after any set-offs." (Reply - Intervene 3). While Berkley is the entity entitled to the funds under the Takeover Agreement, Berkley acknowledges Carter Douglas's interest in the funds. Given the timeline of the filing of this lawsuit, the Takeover Agreement, and the interests held by both Carter Douglas and Berkley, Berkley's motion is timely.

Berkley has met the standard set by Federal Rule of Civil Procedure 24(a)(2) for intervention as of right, and Defendants have provided no authority for their assertion that Berkley's intervention is barred by the state court actions. Therefore, the Court holds that Berkley is entitled to intervene in this matter.

C. **Defendants' Motion to Dismiss - Joinder**

In their Renewed Motion to Dismiss for Failure to Join Indispensable Parties, Defendants argue that Wrenn Excavation, LLC ("Wrenn"), Landers Explosive, Inc. ("Landers"), Berkley, Wayne Cates, and Jennifer Cates are necessary parties to this action. (Defs.' Mot. to Dismiss - Joinder 9). They request that the Court either dismiss Carter Douglas's Complaint for failure to join these individuals and entities, or order them to be joined as parties. (Defs.' Mot. to Dismiss - Joinder 9). Wrenn is an excavation business that acted as a subcontractor on the Shelton Lane project. (Defs.' Mot. to Dismiss - Joinder 3). Landers also did work on the Shelton Lane property and has filed a lien against the property naming both Carter Douglas and Wrenn as the entities with which it contracted. (Defs.' Mot. to Dismiss - Joinder 3).

Federal Rule of Civil Procedure 19(a) sets out the standard to determine whether or not a person or entity is a required party. Fed. R. Civ. P. 19(a). The first requirement is that joinder of the person would "not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a). The addition of Landers would not deprive the court of subject matter jurisdiction as Carter Douglas is a citizen of Oklahoma, as discussed above, and Landers is an Indiana corporation. (Defs.' Mot. to Dismiss - Joinder 2). Wrenn is an administratively dissolved Kentucky LLC of which Wesley Wrenn of Logan County, Kentucky is the sole proprietor. (Defs.' Mot. to Dismiss - Joinder 3). Joining Wrenn, a Kentucky entity, as a defendant would also not destroy diversity because Carter Douglas is an Oklahoma citizen.

Rule 19(a) allows two alternatives to fulfill the second requirement of a finding that a person is a necessary party. Fed. R. Civ. P. 19(a)(1)(A)-(B). The second of these alternatives requires the person to claim an interest relating to the subject matter of the action, which neither Landers nor Wrenn has done. *See* Fed. R. Civ. P. 19(a)(1)(B). For Landers and Wrenn to be necessary parties, their absences must render the Court unable "accord complete relief among existing parties . . . ." Fed. R. Civ. P. 19(a)(1)(A). That is not the case here. The dispute between Carter Douglas and Defendants is unaffected by Landers' lien against the property. Whether performance was sufficiently completed according to the terms of the Takeover Agreement is unrelated to Landers' lien. Landers' lien is ancillary to Carter Douglas's claims and need not be brought into the larger underlying conflict in order to resolve it, although non-payment of Landers by Carter Douglas could impact the contractual dispute with Defendants in this action. Landers is neither a necessary party nor an indispensable party to this action.[12]

Similarly, Wrenn is involved in the subject matter of this case only to the extent that Landers has named it as a responsible party in its lien against the property. Wrenn "has not filed a lien; Wren[n] has not filed a bond claim; Wrenn has not even asserted a right to additional payment for its services." (Pl.'s Resp. to Defs.' Renewed Mot. to Dismiss for Failure to Join Indispensable Party 7). Thus, like Landers, Wrenn need not be brought into the underlying conflict in order to resolve it. Wrenn is, therefore, neither a necessary party, nor an indispensable party.

---

[12] Any mechanic's lien asserted by a non-party is entirely separate from the present breach of contract action, which has no legal effect on the lienholder's ability to enforce its lien. *See Laib v. Markham*, 144 S.W. 82, 83 (Ky. 1912) (holding that a subcontractor is not a necessary party to a mechanic's lienholder's action against the general contractor when the general contractor has agreed to pay the amount instead of the subcontractor). *See also Middleton v. Davis-Rankin Bldg. & Mfg. Co.*, 45 S.W. 896, 897 (Ky. 1898) (stating a mortgage holder to a mortgage that arose during the pendency of a suit to enforce a mechanic's lien was not a necessary party).

Finally Defendants assert that, as an alternative to dismissal, the Cateses should also be joined as parties. (Defs.' Mot. to Dismiss - Joinder 9). Defendants do not, however, make any arguments in their motion in support of the assertion that the Cateses should be joined as defendants, and there is no suggestion that either Wayne or Jennifer Cates is a party to any of the contested contracts in his or her individual capacity. The Court will not entertain such a request absent at least some meritorious argument for the request. *See* KRS 275.150(1) ("[N]o member . . . shall be personally liable by reason of being a member . . . of the limited liability company . . . for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise."). Accordingly, the Court will deny Defendants' motion as to all persons and entities they assert are necessary parties.

## IV.     CONCLUSION

For the reasons detailed above, **IT IS HEREBY ORDERED** that Berkley's Motion to Intervene (DN 24) is **GRANTED**. **IT IS FURTHER ORDERED** that Defendants' Renewed Motion to Dismiss for Failure to Join Indispensable Parties (DN 29), and Defendants' Renewed Motion to Dismiss for Lack of Federal Diversity Jurisdiction (DN 30) are **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
July 27, 2015

cc:     counsel of record

11